IN THE UNITED STATES BANKRUPTCY COURT

FOR THE

SOUTHERN DISTRICT OF GEORGIA

Brunswick Division

| | | |
|---|---|---|
| IN RE: | ) | |
| MARVIN B. SMITH III | ) | Chapter 7 Case |
| SHARON H. SMITH | ) | Number 07-20244 |
| | ) | |
| Debtors | ) | |
| _____ | ) | |
| MARVIN B. SMITH III | ) | |
| SHARON H. SMITH | ) | |
| | ) | Adversary Proceeding |
| Plaintiffs | ) | Number 09-02033 |
| vs. | ) | |
| | ) | |
| ATLANTIC SOUTHERN BANK | ) | |
| | ) | |
| Defendant | ) | |

## ORDER DISMISSING ADVERSARY PROCEEDING WITH PREJUDICE AND DENYING MOTION FOR SANCTIONS

This matter is before me on the pro se motion by Debtors Marvin B. Smith III and Sharon H. Smith for dismissal of this adversary proceeding without prejudice and the motions by Atlantic Southern Bank ("Atlantic Southern") for dismissal with prejudice and for sanctions. The motion by Atlantic Southern for dismissal with prejudice is granted on the grounds of failure to prosecute and willful contempt of the orders of this Court. Additional sanctions, however, are denied.

## BACKGROUND

In their motions and at hearing, both Atlantic Southern and the Smiths argued their positions based on the Smiths' failure to prosecute this particular adversary proceeding. In fact, however, the Smiths have pleaded and failed to prosecute this same claim[1] in a total of three adversary proceedings over the course of more than two years. Because this Order considers the entire history of this claim, the oral ruling I made from the bench is incorporated by reference into this Order and is supplemented as follows.

The Smiths' claim as asserted in all three adversary proceedings is based on the following facts:

## I. Facts Underlying the Claim

The Smiths are a retired couple whose livelihood once consisted of the buying and reselling of exclusive residential properties. Borrowing large sums of money to purchase such properties was a necessary component of this work, and when the real estate market began its current epic crash, the Smiths were left holding properties they were unable to sell, securing promissory notes they were unable to pay. The result was their

---

[1] Depending on context, the term "claim" as used in this Order has one of two meanings: first, a synonym for the term "cause of action," Leaf v. Shelnutt, 400 F.3d 1070, 1079 (7th Cir. 2005) ("[C]laim has become a surrogate for the term 'cause of action,' and that term has been defined in turn to include all theories of liability arising out of the same transaction or occurrence."); and second, a right to payment as defined in the Bankruptcy Code, 11 U.S.C. § 101(5)(A).

2

filing of a chapter 11 case on April 2, 2007, and its conversion to a case under chapter 7 on May 8, 2008.

The Smiths' dispute with Atlantic Southern concerns the real property identified as Cottage 526, 24th Street, Sea Island, Georgia ("Sea Island Cottage"). Atlantic Southern foreclosed on the Sea Island Cottage on the basis of a first-priority deed to secure debt after the Smiths failed to make adequate protection payments under the provisions of an order on motion for relief from stay (Case Dkt. No. 102).[2] Atlantic Southern then bought the Sea Island Cottage for $5.1 million as the sole bidder at a foreclosure sale on May 6, 2008. (Testimony of James Randall Griffin, senior vice president of Atlantic Southern, Hr'g on Smiths' Mot. for Prelim. Inj., Feb. 12, 2009, A.P. No. 08-02018.)

It is undisputed that the foreclosure process was defective. Two months after the foreclosure sale, Atlantic Southern told the Smiths about the defect, and the Smiths then quitclaimed the Sea Island Cottage to Atlantic Southern under circumstances that the Smiths have later characterized as evidencing fraud. At the time the Smiths signed the quitclaim deed, as well as during the proceedings culminating in the order on stay relief, the Smiths were represented by counsel.

---

[2] References in this Order to the chapter 7 case docket appear in the following format: "Case Dkt. No. _____." Unless otherwise indicated, references to the dockets in the three adversary proceedings appear in this format: "A.P. No._____, Dkt. No._____."

The defect in the foreclosure process resulted from the fact that Atlantic Southern did not originally hold a first-priority security interest in the Sea Island Cottage. Atlantic Southern originally held only a second-priority security interest, acquired as part of a bulk purchase of the assets of another bank. (Id.) Knowing the Smiths were in default under the first-position mortgage, Atlantic Southern was concerned that it would lose its second-position interest in the event of a first-position foreclosure. To protect its second-position interest, Atlantic Southern bought the first-position mortgage from the original grantee, United Community Bank. (Id.)

It is undisputed that the assignment executed by United Community Bank on February 13, 2007, was defective. On July 2, 2008, approximately two months after the foreclosure sale, James Randall Griffin of Atlantic Southern emailed the Smiths to tell them that United Community Bank had assigned its interest in the mortgage to "Sapelo Southern Bank," a trade name used by Atlantic Southern; that Atlantic Southern had discovered this fact the previous week during an internal document review; and that a trade name could not be used in place of the name of the legal entity. (See Mot. to Recon. Claims, Ex. O, Sept. 13, 2010, Case Dkt. No. 328 at 47.)

4

The email went on to say that Atlantic Southern had obtained and re-recorded a corrected assignment and that the Smiths had a choice about how to "remedy the problem" that the defect had created with the foreclosure sale. (Id.) The problem was that both the legal notice of the foreclosure sale and the deed under power of sale also said "Sapelo Southern Bank." (See Exs. H, I; Case Dkt. No. 328 at 39-42.)

The email presented the following two options: "One would be for you [Mr. Smith] and Mrs. Smith to sign a quitclaim deed to the bank [Atlantic Southern]. The other would be to go through the public advertising again, and foreclose on the courthouse steps in August." (Ex. O, Case Dkt. No. 328 at 47.)

The Smiths signed the quitclaim deed on July 8, 2008 (Ex. Q, Case Dkt. No. 328 at 66-67), less than a week after receiving Griffin's email. According to testimony from both Griffin and Mr. Smith, the parties agreed that the executed quitclaim deed would be held in escrow by the chapter 7 trustee and that Atlantic Southern would give the Smiths the rest of July to get a contract for the sale of the Sea Island Cottage. (Hr'g on Mot. for Prelim. Inj., Feb. 12, 2009, A.P. No. 08-02018.) No contract was forthcoming during that time. Thereupon, the Chapter 7 Trustee delivered the quitclaim deed to Atlantic Southern. Approximately one year later, Atlantic Southern sold the Sea

5

Island Cottage to an unidentified purchaser. (Case Dkt. No. 328 at 2.)

## II. **The Three Adversary Proceedings**

### A. Adversary Proceeding No. 08-02018: The Amended Counterclaim

The Smiths first brought the claim based on the above facts in an amendment to their counterclaim ("Amended Counterclaim") filed in an adversary proceeding initiated by Atlantic Southern on August 28, 2008. The complaint alleged that the Smiths had wrongly removed certain "valuable fixtures" from the Sea Island Cottage. (Compl. ¶ 4, A.P. No. 08-02018, Dkt. No. 1.)[3] The Smiths, proceeding pro se by this time, answered and counterclaimed that Atlantic Southern, through its agents, had inflicted emotional distress on the Smiths by "repeated harassment and humiliation" during the Smiths' eviction from the Sea Island Cottage. (CounterCl. ¶ 9, Dkt. No. 7.)

Then, in the amendment filed on November 25, 2008, the Smiths pleaded in relevant part as follows:

> 21. Atlantic Southern Bank petitioned this Court and was eventually granted a relief of stay by misrepresenting its ownership of the loan and by presenting selective documentation. . . . Atlantic Southern Bank did not present documentary proof of its ownership of the loan.

---

[3] All docket citations in this subsection of the Order are to the docket in A.P. 08-02018.

6

A. The Promissory Note attached to the Motion [for stay relief] was incomplete. There was no signature page; therefore, authenticity is questionable. The promissory note is essential documentation.

. . . .

24. . . . Debtors and Trustee were convinced by Atlantic Southern Bank that the Quit Claim Deed was a simple solution to a technicality, the other remedy for which was to rerun the foreclosure advertisement. However, the presentation of selective documentation as noted in paragraph 21 indicates Plaintiff misrepresented its ownership of the loan to this Court and to the Debtors. In which case, the Quit Claim Deed may not be valid.

. . . .

WHEREFORE, Debtors/Defendants pray unto this Court:

. . . .

**3. To determine whether, or not, the Quit Claim Deed was legally obtained from Debtors and to determine its validity.**

(Am. Countercl., Dkt. No. 40 at 2-4. (emphasis added.))

Approximately two months after filing the Amended Counterclaim, the Smiths filed the following papers seeking to prohibit Atlantic Southern from selling the Sea Island Cottage:

- Request for Preliminary Injunction (Dkt. No. 52, Jan. 30, 2009)

- Amendment to Request for Preliminary Injunction (Dkt. No. 53, Feb. 2, 2009)

- Request for Temporary Restraining Order (Dkt. No. 54, Feb. 2, 2009)

7

As a basis for the requested relief, the Smiths recited the same allegations, often verbatim, as in the Amended Counterclaim.

The request for a TRO was denied on the ground that the Smiths failed to comply with the requirements under the Federal Rules of Civil Procedure for issuance of a TRO. (Order, Dkt. No. 57, Feb. 2, 2009.) The request for preliminary injunction was heard on February 12, 2009, and denied in a comprehensive order approximately one week later (Order Denying Request for Preliminary Injunction, Dkt. No. 69, Feb. 18, 2009).

Meanwhile, discovery was underway, and the Smiths were filing multiple discovery-related motions and notices:

- Motion for Extension of Time to Serve Expert Witness Report (Dkt. No. 44)

- Notice to Take Deposition of Randy Griffin Pursuant to Bankruptcy Rule 7030 (Dkt. No. 50)

- Notice to Take Deposition of David Sweat Pursuant to Bankruptcy Rule 7030 (Dkt. No. 51)

- Notice of Cancellation of Depositions (Dkt. No. 61)

- Motion to Produce Documentation (Dkt. No. 74)

- Motion for Additional Time to Serve Expert Witness Report (Dkt. No. 75)

- Notice of Failure to Give Adequate Notification to Take Depositions (Dkt. No. 92)

- Notice to Take Deposition of Randy Griffin Pursuant to Bankruptcy Rule 7030 (Dkt. No. 99)

- Notice to Take Deposition of David Sweat Pursuant to Bankruptcy Rule 7030 (Dkt. No. 100)

- Notice to Produce (Dkt. No. 101)

- Motion for Additional Time to Serve Expert Witness Report (Dkt. No. 102)

- Notice of Cancellation of Depositions (Dkt. No. 112)

- Motion to Compel (Dkt. No. 114)

- Motion to Amend Motion to Compel (Dkt. No. 118)

- Amendment to Motion to Amend Motion to Compel (Dkt. No. 119)

Four scheduling orders were entered in this adversary proceeding (Dkt Nos. 38, 68, 79, 116), due primarily to repeated requests by the Smiths for extensions of time (Order Denying Mot. for Additional Time to Serve Expert Witness Report, Dkt. No. 104).

On February 12, 2009, the day of the hearing on the request for preliminary injunction, the Smiths moved for entry of default, asserting that Atlantic Southern's answer to the Amended Counterclaim was untimely filed. (Mot. for Entry of Default, Dkt. No. 89.) The Clerk entered a default on March 2, 2009. (Dkt. No. 76.) The next day, Atlantic Southern moved to set aside the default. (Dkt. No. 77.)

Atlantic Southern had by this time engaged counsel from Savannah, an hour-and-a-half's drive from Brunswick, in addition to local counsel who heretofore had represented Atlantic Southern in this case. (Notice of Appearance of C. James McCallar, April 8, 2009, Dkt. No. 90.) Atlantic Southern's new attorney filed a

9

motion to strike the Amended Counterclaim and to set aside the default on the ground that the Federal Rules of Civil Procedure do not provide for amended counterclaims and consequently no answer was required. (Dkt. No. 91 at 2.)

The motions to set aside the entry of default and to strike the Amended Counterclaim, with responses by the Smiths, were heard on May 7, 2009. At the conclusion of the hearing, I allowed both the Amended Counterclaim and Atlantic Southern's answer to the Amended Counterclaim; vacated the default; and gave Atlantic Southern twenty days in which to file any amendment to its allowed answer. (Order, Dkt. No. 107.)

Two weeks later, on May 22, 2009, the Smiths moved for leave to file a second amendment to the counterclaim. (Dkt. No. 125.) Atlantic Southern objected. (Dkt. No. 130.)

But before any determination could be made on whether a second amendment would be allowed, the Smiths moved for voluntary dismissal of the counterclaim. The Smiths filed the motion in court on June 11, 2009, at the beginning of the hearing on the Smiths' motion to compel, asking for dismissal without prejudice "in order that [the Smiths] may consider their options." (Dkt. No. 135.)

The voluntary dismissal was approved. (Order Approving Voluntary Dismissal of Counterclaim, Dkt. No. 137.) Then on August

13, 2009, Atlantic Southern moved for voluntary dismissal of the adversary proceeding, and that dismissal was approved as well. (Order Approving Voluntary Dismissal, Dkt. No. 141.)

## B. Adversary Proceeding No. 09-02041 and Adversary Proceeding No. 09-02033

After entry of the order approving the voluntary dismissal of the counterclaim, the Smiths on July 6, 2009, filed the first motion in what escalated to a three-month barrage of motions in the underlying case. (See Motion to Vacate Order Granting Relief of Stay to Atlantic Southern Bank, Case Dkt. No. 205; Supplemental Brief in Support of Motion to Vacate Order Granting Relief of Stay to Atlantic Southern Bank, Case Dkt. No. 222; Reply to Response to Respondents' Supplemental Brief in Support of Motion to Vacate and Objection to Affidavit of Randy Griffin, Case Dkt. No. 245; Amended Motion to Vacate Order Granting Relief of Stay to Atlantic Southern Bank, Case Dkt. No. 249; Motion to Disallow Claims of Sapelo Southern Bank, Case Dkt. No. 253; Motion to Reconsider Claims of Sapelo Southern Bank/Atlantic Southern Bank, Case Dkt. No. 258; Motion to Dismiss Adversary Proceeding and Motion to Dismiss Motion to Disallow Claims of Sapelo Southern Bank and Motion to Allow Amended Motion to Vacate and Motion to Reconsider to be Heard as Contested Matters, Case Dkt. No. 256.)

None of the motions could be adjudicated as contested matters, however, because the relief the Smiths repeatedly sought—damages for stay violation and determination of an interest in real property—is available only through the filing of an adversary proceeding under the provisions of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules" or "F.R.B.P."): "The following are adversary proceedings: (1) a proceeding to recover money or property . . . (2) a proceeding to determine the validity, priority, or extent of a lien or other interest in property . . . ." F.R.B.P. 7001(1)-(2).

The motions and other papers were in every instance based on the same facts as the Amended Counterclaim. By now, however, the Smiths had refined their legal theory to add allegations against "Sapelo Southern Bank," which according to earlier unrefuted testimony, was a trade name, not a legal entity.[4] (See Testimony of James Randall Griffin, senior vice president of Atlantic Southern, Hr'g on Smiths' Mot. for Prelim. Inj., Feb. 12, 2009, A.P. No. 08-02018.)

Because the motions could not be adjudicated as contested matters within the bankruptcy case, I ordered the opening of two adversary proceedings in which the incorrectly filed motions and other papers would be redocketed as complaints

---

[4] The Smiths later stipulated that Sapelo Southern Bank is not a legal entity. (See Order Granting Motion to Reconsider Claims, Dec. 3, 2010, Case Dkt. No. 372 at 1.)

12

and amendments to the complaints, along with any responses that Atlantic Southern had already filed. (See Orders, Case Dkt. Nos. 238, 264-1.)

The orders did not simply provide that an adversary proceeding was required, however. The orders set out and applied the relevant subsections of Rule 7001, establishing without question that the relief requested must be sought in an adversary proceeding:

> Here, the Motion to Disallow requests that a deed under power of sale and a quit claim deed be stricken as void. [citation omitted] **To determine whether the deeds should be stricken requires the determination of "the validity, priority, or extent of . . . [an] interest in property"** under Rule 7001(2).

(Case Dkt. No. 264-1 at 2 (emphasis added).) I also made explicitly clear that the Smiths as pro se litigants would not be excused from complying with the procedural rules. (Id. at 3.)

The orders further directed the Clerk of Court to issue summons so that the Smiths could perfect service under Rule 7004 of the Bankruptcy Rules, provided, however, that any filing deficiency be cured first. (Id.) Accordingly, adversary proceeding number 09-02041 was opened as Smith v. Sapelo Southern Bank & Atlantic Southern Bank and adversary proceeding number 09-02033 was opened as Smith v. Atlantic Southern Bank.

13

The Smiths, however, refused to prosecute either of the adversary proceedings.

### 1. Adversary Proceeding No. 09-02041

Adversary Proceeding number 09-02041 ("Sapelo Southern Adversary Proceeding") was opened on September 14, 2009, with the Motion to Disallow Claims of Sapelo Southern Bank designated the Complaint and the Motion to Reconsider Claims of Sapelo Southern Bank/Atlantic Southern Bank designated an Amendment to the Complaint. (See Order, Case Dkt. No. 264-1.) The 30-page Complaint appeared to be wholly copied-and-pasted from the Smiths' previous filings, with exhibits totaling 57 additional pages. (See A.P. No. 09-02041, Dkt. No. 1.) The Amendment to the Complaint was essentially the same document as the Complaint, with minor changes and a different title, and included the same exhibits. (See id., Dkt. No. 2.)

The Material Facts as set out in both pleadings were by this time familiar, alleging that Atlantic Southern did not prove perfection of its security interest and had obtained the quitclaim deed from the Smiths by fraud. (Id., Dkt. No. 1 at 2-9; Dkt. No. 2 at 2-9). The Conclusion also was familiar: "[T]he foreclosure by Sapelo Southern Bank is void. All subsequent acts in violation of the stay, including the Quit Claim Deed and all subsequent transfers and sales, are void." (Id., Dkt. No. 2 at 27.) Likewise,

14

the prayer for relief again sought adjudication of the validity of the quit claim deed. (Id., Dkt. No. 1 at 27; Dkt. No. 2 at 27-28.)

Notwithstanding my order, summons was never served in the Sapelo Southern Adversary Proceeding. The Clerk's office issued a Notice of Defective Complaint or Pleading on October 21, 2009, informing the Smiths that an adversary cover sheet was required. (A.P. No. 09-02041, Dkt. No. 4.) By refusing to cure the deficiency, the Smiths prevented the issuance of summons under the terms of my order. (See Case Dkt. No. 264-1 at 4.) As a result, the Sapelo Southern Adversary Proceeding was dismissed almost exactly two months from the day it was opened "due to Plaintiffs' failure to respond to notice of deficiency." (Order, A.P. No. 09-02041, Nov. 13, 2009, Dkt. No. 7.)

### 2. Adversary Proceeding No. 09-02033

Adversary Proceeding Number 09-02033 ("Atlantic Southern Adversary Proceeding")—to be dismissed with prejudice upon entry of this Order—was opened on July 6, 2009, with the Motion to Vacate Order Granting Relief of Stay to Atlantic Southern Bank. (See Order Requiring the Opening of an Adversary Proceeding, Case Dkt. No. 238.) The 29-page motion, designated the Complaint, again appeared to be copied-and-pasted from the Smiths' previous filings, with exhibits totaling 56 additional pages. (See A.P. No. 09-02033, Dkt. No. 1.) The Material Facts section was very nearly

15

the same as, if not identical to, the Material Facts section of the Complaint in the Sapelo Southern Adversary Proceeding. (See id. at 2-9.)

Only the prayer for relief was substantially different. Rather than seeking adjudication of the validity of the quit claim deed to Atlantic Southern, the Complaint here sought compensatory and punitive damages for willful violation of the automatic stay. (Id. at 26.) This relief, again, is available only in an adversary proceeding. (See Order Requiring the Opening of an Adversary Proceeding, Case Dkt. No. 238 at 2.)

On October 9, 2009, three more papers that the Smiths incorrectly filed in the underlying case were moved to the Atlantic Southern Adversary Proceeding, in accordance with my Order Denominating Pleadings as Amendments to Complaint and Requiring Reissuance of Summons (Case Dkt. No. 263). The papers are as follows: Supplemental Brief in Support of Motion to Vacate Order Granting Relief of Stay to Atlantic Southern Bank (Case Dkt. No. 222); Reply to Response to Respondents' Supplemental Brief in Support of Motion to Vacate and Objection to Affidavit of Randy Griffin (Case Dkt. No. 245); and Amended Motion to Vacate Order Granting Relief of Stay to Atlantic Southern Bank (Case Dkt. No. 249). These papers were designated, respectively, the First Amendment to the Complaint (A.P. No. 09-02033, Dkt. No. 4), the

16

Second Amendment to the Complaint (id. at Dkt. No. 24), and the Third Amendment to the Complaint (id. at Dkt. No. 25).

All three Amendments and the Complaint in the Atlantic Southern Adversary Proceeding are based on the same set of facts as the Amended Counterclaim in adversary proceeding number 08-02018 and the Complaint and Amendment to the Complaint in the Sapelo Southern Adversary Proceeding (A.P. No. 09-02041). Moreover, the prayer for relief in the Third Amendment to the Complaint in essence reiterates the relief the Smiths first sought more than two years ago: "that . . . [t]his Court strike the void Quit Claim Deed from the Glynn County records." (A.P. No. 09-02033, Dkt. No. 25.)

The Smiths never served summons in this, the Atlantic Southern Adversary Proceeding, notwithstanding that summons was issued three times, including twice under my explicit orders. (See Case Dkt. Nos. 238, 263.) Moreover, the Smiths readily admit that they at no time had any intention of prosecuting their claim in the Atlantic Southern Adversary Proceeding. (See Motion to Dismiss Adversary Proceeding, A.P. No. 09-02033, Dkt. No. 43 ¶ 7 ("It has always been the Smiths' objective to file a pleading in the main case which would not necessitate the filing of an adversary proceeding . . . .").)

17

### III. The Frivolous Appeals

Instead of prosecuting the adversary proceedings, the Smiths appealed to the district court from the orders related to the opening of the adversary proceedings, as well as from an order striking a motion that could not be considered as filed. (Notices of Appeal, Case Dkt. Nos. 270, 282, 272.) The Smiths challenged the following orders: Order Striking Pleading (Case Dkt. No. 261), Order Requiring the Opening of an Adversary Proceeding (Case Dkt. No. 264-1), and Order Denominating Pleadings as Amendments to Complaint and Requiring Reissuance of Summons (Case Dkt. No. 263).

The Smiths sought to proceed in forma pauperis on all three appeals. (Case Dkt. Nos. 271, 283, 273.) The district court first denied the in forma pauperis applications, then denied reconsideration of the denials and dismissed the appeals as frivolous (Case Dkt. Nos. 320, 318, 319).

Undeterred, the Smiths appealed to the Eleventh Circuit Court of Appeals, which dismissed the appeals sua sponte for lack of jurisdiction. (Case Dkt. Nos. 368, 367, 369.)

### DISCUSSION

### I. The Motions to Dismiss

Following the circuit-level dismissal of the Smiths' appeals, the bankruptcy Clerk's office issued summons for the

18

third time in the Atlantic Southern Adversary Proceeding. (A.P. No. 09-02033, Dkt. No. 40). One week later, on December 15, 2010, the Smiths moved for voluntary dismissal without prejudice.

The Smiths acknowledged in their motion ("Smith Motion") that they had never served summons in this adversary proceeding, although they "appreciate[d]" the most recent reissuance of summons. (Smith Mot. ¶¶ 1, 8, A.P. No. 09-02033, Dkt. No. 43.) They explained that they did not want to bring their claim in an adversary proceeding, "because doing so could delay resolution until the Smiths are discharged or dismissed from Bankruptcy; thereby, making violation of the stay a moot issue and allowing invalid claims of Atlantic Southern Bank." (Id. ¶ 7.) Further, the Smiths said they intended to file a contested matter in the underlying case. (Id. ¶ 8.)

The Smiths did in fact file a motion in the underlying case. On the morning of the hearing on the motions to dismiss, before court was convened, the Smiths filed the 80-page Motion to Reconsider Claims of Atlantic Southern Bank (Case Dkt. No. 391). This motion is indistinguishable from the Smiths' previous motions and requests—predictably—the following relief:

> 5. To declare Sapelo Southern Bank's dispossessory warrant, foreclosure action, and Deed Under Power of Sale void as a matter of law;
>
> 6. To declare the Quit Claim Deed void as a matter of law;

19

> 7. To declare all transfers, sales and Deeds by
> Atlantic Southern Bank void as [a] matter of
> law.

(Id. at 37-38.) I have not ruled on this motion as of the date of this Order.

In response to the Smiths' motion to dismiss without prejudice, Atlantic Southern filed a motion for dismissal with prejudice ("Atlantic Southern Motion") on the ground of failure to prosecute. Atlantic Southern argued that the Smiths' refusal to even attempt service is prejudicial to Atlantic Southern, which has been forced to defend the Smiths' "myriad of pleadings" in the underlying case, this adversary proceeding, and the Smiths' appeals over the year-and-a-half this adversary proceeding has been pending. (Atlantic Southern Mot., A.P. No. 09-02033, Dkt. No. 47 at 1.)

At the hearing on the motions, Mrs. Smith insisted that the Smiths have never tried to delay or to "not do what the Court wants." (Hr'g on Motions to Dismiss, Jan. 13, 2011.) In response to questioning from the bench, Mrs. Smith said she understood that certain kinds of relief are available procedurally only in an adversary proceeding. Mrs. Smith also said, "From the beginning, I did not want it to be an adversary proceeding . . . ." (Id.)

Over the course of the hearing, I reiterated numerous times what should already have been crystal clear from my previous

20

orders: that any relief delineated in Rule 7001 requires an adversary proceeding. I also stressed that this requirement cannot be circumvented, as the Smiths have repeatedly tried to do, by pleading for such relief in the context of a motion to reconsider claims.

Notwithstanding, Mrs. Smith remained unconvinced that relief in a contested matter would be limited to the issue of claims allowance, continually interrupting and interjecting, "I have another argument . . . ." (Id.) Finally, however, as if suddenly realizing that the claim itself was at stake, Mrs. Smith said the Smiths would prosecute an adversary proceeding "if you absolutely feel we cannot do it another way." (Id.)

## II. Dismissal Under Rule 41(b)

### A. The Claim

The Atlantic Southern Adversary Proceeding realleges a claim that the Smiths first brought more than two years ago. "[I]f a case arises out of the same nucleus of operative fact, or is based upon the same factual predicate as a former action . . . the two cases are really the same 'claim' or 'cause of action' . . . ." Kaiser Aerospace & Elecs. Corp. v. Teledyne Indus., Inc. (In re Piper Aircraft Corp.), 244 F.3d 1289, 1297 (11th Cir. 2001).

21

Here, the Amended Counterclaim, the Sapelo Southern Adversary Proceeding, and the Atlantic Southern Adversary Proceeding all arose out of the same nucleus of operative fact: Atlantic Southern received relief from the automatic stay and foreclosed on the Sea Island Cottage through what Atlantic Southern later acknowledged was a defective foreclosure process. Having been informed by Atlantic Southern that the foreclosure was based on a defective assignment and that the defect had been cured, the Smiths voluntarily quitclaimed the Sea Island Cottage to Atlantic Southern to avoid having to go through a second foreclosure. Atlantic Southern later sold the Sea Island Cottage to an unidentified purchaser.

The dismissal with prejudice thus encompasses any allegation against Atlantic Southern, whether in its legal name or a trade name, that is based on these facts and that must be prosecuted as an adversary proceeding under Rule 7001.

### B. The Standard

Rule 41 of the Federal Rules of Civil Procedure, made applicable in bankruptcy by Rule 7041 of the Bankruptcy Rules, provides in relevant part as follows:

> If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this

22

> subdivision   (b)   .   .   .   operates   as   an
> adjudication on the merits.

Fed. R. Civ. P. 41(b). Similarly, the Local Rules of the United States District Court for the Southern District of Georgia, applicable in bankruptcy cases and proceedings, also provide for dismissal with prejudice for want of prosecution and for "willful disobedience or neglect of any order of the Court." LR 41.1.

In the Eleventh Circuit, the standard for dismissal with prejudice under Rule 41(b) is "whether there is a clear record of delay or willful contempt and a finding that lesser sanctions would not suffice." Goforth v. Owens, 766 F.2d 1533, 1535 (11th Cir. 1985) (internal quotation marks omitted). Other circuits apply a multi-factor test. The First Circuit, for example, considers the following non-exclusive list of factors: "the severity of the violation, the legitimacy of the party's excuse, repetition of violations, the deliberateness vel non of the misconduct, mitigating excuses, prejudice to the other side and to the operations of the court, and the adequacy of lesser sanctions." Malot v. Dorado Beach Cottages Assocs., 478 F.3d 40, 44 (1st Cir. 2007).

Dismissal with prejudice is "a sanction of last resort, applicable only in extreme circumstances." Goforth, 766 F.2d at 1535. Although the court must consider the sufficiency of

✎AO 72A
(Rev. 8/82)

alternative, lesser sanctions, "such consideration need not be explicit." Zocaras v. Castro, 465 F.3d 479, 484 (11th Cir. 2006).

Here, dismissal with prejudice is supported on at least five grounds. Moreover, the facts show that no lesser sanction will suffice.

### 1. Failure to Prosecute

Extreme circumstances justifying dismissal with prejudice may include delay stretching over years, Malot, 478 F.3d at 44, or a plaintiff's long pattern of conduct that amounts to want of prosecution, Jones v. Graham, 709 F.2d 1457, 1462 (11th Cir. 1983). Both of these conditions are met here.

More than two years have passed since the Smiths first alleged this claim against Atlantic Southern. Since November 25, 2008, the date of the Amended Counterclaim, the Smiths have filed many improper motions and three frivolous appeals, but have steadfastly refused to prosecute this claim in the only way that the Bankruptcy Rules allow: through an adversary proceeding as provided under Rule 7001. The Smiths thus have engaged in a long pattern of conduct that has resulted in years of delay amounting to failure to prosecute this claim.

Dismissal with prejudice may also be based on the plaintiff's unreasonable delay in serving summons. Arundar v.

24

<u>Staff Builders Temp. Pers.</u>, Inc., 92 F.R.D. 770, 771 (N.D. Ga. 1982). An unreasonable delay may be less than a year. <u>See</u> <u>Campbell v. United States</u>, 496 F. Supp. 36 (E.D. Tenn. 1980) (dismissing case when summons had not been served seven months after filing of complaint). This condition also is met here.

The Smiths refused to serve summons that was issued and reissued a total of three times over a period of eighteen months in the Atlantic Southern Adversary Proceeding. Eighteen months is an unreasonable delay that supports dismissal with prejudice.

## 2. Willful Disregard of Court Orders

Extreme circumstances justifying dismissal with prejudice may also include "intentional and willful disregard of the Court's orders." <u>Arunder</u>, 92 F.R.D. at 773. "Without a doubt, the disregard of court orders qualifies as extreme behavior, and we do not take such insolence lightly." <u>Malot</u>, 478 F.3d at 44. This condition is met here as well.

The Smiths have at every turn disregarded and attempted to circumvent my orders requiring that they comply with Bankruptcy Rule 7001. When I ordered the Sapelo Southern Adversary Proceeding opened, the Smiths refused to cure a filing defect so that summons could be issued. When I ordered the Atlantic Southern Adversary Proceeding opened, the Smiths refused for eighteen months to serve

25

summons. Moreover, for one full year of that time, the Smiths in effect prevented reissuance of summons by the filing of frivolous appeals. The Smiths thus intentionally and willfully disregarded the Court's orders, having "ignored everything the court has directed or required," Goforth, 766 F.2d at 1535.

### 3. Legitimacy of the Excuse

The Smiths say they do not want to prosecute their claim in an adversary proceeding because "doing so could delay resolution until the Smiths are discharged or dismissed from Bankruptcy." (Smith Mot. ¶ 7.) To the contrary, what has delayed resolution of the Smiths' claim is their refusal to prosecute it as the Bankruptcy Rules require and their pursuit of frivolous appeals that stalled all progress toward resolution for more than a year.

Moreover, the Smiths cannot reasonably believe that the Rules will be bent to their advantage to allow them to prosecute this claim as a contested matter. My order of more than a year ago established that procedural rules apply uniformly to all parties. (See Case Dkt. No. 264-1 at 3.) The Smiths thus have no legitimate excuse for their failure to prosecute this claim.

26

#### 4. Prejudice Suffered by Atlantic Southern

Dismissal under Rule 41(b) is often warranted when the defendant has suffered prejudice as a result of the plaintiff's conduct. Direct Media Corp. v. Camden Telephone & Telegraph Co., 989 F. Supp. 1211, 1220 (S.D. Ga. 1997). Here, Atlantic Southern has been required for more than two years to defend the Amended Counterclaim, the Atlantic Southern Adversary Proceeding, a score of motions in the underlying case, and three frivolous appeals. Not surprisingly, Atlantic Southern found it necessary to engage additional counsel as the pace of the Smiths' filings accelerated.

Yet notwithstanding the unquestionably large sums Atlantic Southern has spent on defense, the Smiths' claim is no closer to resolution now than it was on the day the Amended Counterclaim was filed. The prejudice already suffered by Atlantic Southern and the additional prejudice from further delay thus support dismissal with prejudice.

#### 5. Prejudice to the Operations of the Court

The purpose of Rule 41(b) is to "allow[] the Court to manage its docket, enforce its orders, and effectuate the prompt resolution of litigation." Direct Media Corp., 989 F. Supp. at 1220. Here, many hundreds of hours have been expended by the Clerk's office and by chambers staff to correctly redocket,

27

substantively address, set for hearing, and otherwise manage the huge volume of papers the Smiths have filed over the years of their dogged refusal to prosecute this claim as the Bankruptcy Rules require.

This enormous and disproportionate expenditure of judicial resources can no longer be tolerated in light of the Smiths' continued defiance of the requirements of the Bankruptcy Rules and of my orders. Dismissal with prejudice is thus required for this Court to manage its docket, enforce its orders, and effectuate the prompt resolution of this litigation.

### III. The Motion for Sanctions

I have already denied one motion for sanctions filed by Atlantic Southern. (See Case Dkt. No. 374.) I deny this motion as well, because I do not hold pro se litigants to the same standard as lawyers. See Sampson v. Fulton Co. Jail, 157 Fed. Appx. 242, 243 (11th Cir. 2005).

But the Smiths are forewarned. Any additional motions brought in the bankruptcy case that raise issues arising from the facts underlying the Amended Complaint, the Sapelo Southern Adversary Proceeding, and the Atlantic Southern Adversary Proceeding and requiring the issuance of a summons under Rule 7001 will result in dismissal of the motion and the imposition of

28

sanctions in the form of an award of fees and costs to Atlantic Southern.

Although I have by now made myself quite clear concerning the identity of this claim, I reiterate the operative facts on which the claim is based: Atlantic Southern received relief from the automatic stay and foreclosed on the Sea Island Cottage through what Atlantic Southern later acknowledged was a defective foreclosure process. Having been informed by Atlantic Southern that the foreclosure was based on a defective assignment and that the defect had been cured, the Smiths voluntarily quitclaimed the Sea Island Cottage to Atlantic Southern to avoid having to go through a second foreclosure. Atlantic Southern later sold the Sea Island Cottage to an unidentified purchaser.

CONCLUSION

An adversary proceeding is initiated by the filing of a complaint and the issuance and service of summons. F.R.B.P. 7003, 7004. Service of summons is not an arbitrary requirement, but is instead the necessary means by which the court obtains personal jurisdiction over the defendant so that the ultimate determination by the court is valid and enforceable. See Campbell v. United States, 496 F. Supp. 36, 39 (E.D. Tenn. 1980) ("It is axiomatic that the due process of law requires proper service of process in

29

order for the Court to obtain in personam jurisdiction over each defendant.").

Under the Bankruptcy Rules, the following proceedings, among others, are adversary proceedings:

> (1) a proceeding to recover money or property . . .
>
> (2) a proceeding to determine the validity, priority, or extent of a lien or other interest in property . . .
>
> . . . .
>
> (7) a proceeding to obtain an injunction or other equitable relief . . .
>
> . . . .
>
> (9) a proceeding to obtain a declaratory judgment relating to any of the foregoing . . . .

F.R.B.P. 7001(1), (2), (7), (9).

The Smiths have sought relief against Atlantic Southern under all four of these subsections of Rule 7001. In this, the Atlantic Southern Adversary Proceeding, the Smiths have pleaded for money damages under Rule 7001(1). (See A.P. No. 09-02033, Dkt. No. 1 at 26 (seeking compensatory and punitive damages).) The Smiths have numerous times sought relief requiring the determination of the validity of an interest in property under Rule 7001(2). (See, e.g., id., Dkt. No. 25 at 2 (seeking to have deed under power of sale and quitclaim deed stricken from county records).) The Smiths have sought injunctive relief under Rule 7001(7). (See A.P. No. 08-02018, Dkt. No. 52 at 2 (seeking

30

preliminary injunction prohibiting sale).) And the Smiths have sought declaratory relief under Rule 7001(9). (See id., Dkt. No. 40 at 4 (seeking determination as to whether quitclaim deed is valid).)

Over more than two years of litigation, the Smiths have refused to properly present these issues for resolution in every instance except one, in which their request was denied on the merits (see A.P. No. 08-02018, Dkt. No. 69 (denying preliminary injunction)). In all other instances, whether by obtaining a dismissal on motion (A.P. No. 08-02018, Dkt. No. 137), obtaining a dismissal by refusing to cure a filing deficiency (A.P. No. 09-02041, Dkt. No. 7), or ignoring orders requiring service of summons and now moving again for dismissal without prejudice (A.P. 09-02033, Dkt. No. 43), the Smiths have obstinately refused to prosecute this claim. The Smiths are now foreclosed from seeking any relief under Rule 7001 as it relates to this claim.

For more than two years, the Smiths as pro se litigants have been shielded from the consequences of defiance of the Bankruptcy Rules and the orders of this Court. Rather than dealing summarily with the flouting of my orders and the failure to prosecute, as I would have with counsel, I issued orders that instead attempted to guide and instruct.

31

But those orders and instructions were ignored. Moreover, the defiance continues, as shown by the Motion to Reconsider Claims of Atlantic Southern Bank that the Smiths filed the morning of the hearing on the motions to dismiss. Now, at the eleventh hour and due solely to the prospect of dismissal with prejudice, the Smiths say they will prosecute their claim against Atlantic Southern in an adversary proceeding.

Enough is enough. The Smiths have had more than two years in which to prosecute this claim. And for more than two years—through three adversary proceedings, a staggering number of improper motions, and additional delay induced by frivolous appeals—the Smiths have obstinately refused to proceed properly under the Bankruptcy Rules as the orders of this Court have required.

Dismissal with prejudice is an extreme sanction imposed only where there is a clear record of delay or willful contempt and a finding that lesser sanctions will not suffice. Here, the facts establish a clear record of delay and willful contempt, as well as the certainty that a lesser sanction will not suffice.

The motion by Atlantic Southern Bank for dismissal with prejudice under Rule 41(b) of the Federal Rules of Civil Procedure is therefore **ORDERED GRANTED**; and

32

**FURTHER ORDERED** that the dismissal operates as an adjudication on the merits of all issues (1) arising under the facts as set out in this Order, (2) concerning Atlantic Southern Bank in its legal name or any trade name, and (3) requiring the issuance of a summons under any subsection of Rule 7001, including but not limited to Rule 7001(1), (2), (7), or (9); and

**FURTHER ORDERED** that the Motion for Sanctions filed by Atlantic Southern Bank is **DENIED**.

JOHN S. DALIS
United States Bankruptcy Judge

Dated at Brunswick, Georgia,
this ____ day of January, 2010.

❧AO 72A
(Rev. 8/82)